ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ÁNGEL LUIS RAMÍREZ<br><br>Apelado<br><br>v.<br><br>HOSPITAL PAVÍA DE ARECIBO, UNIVERSAL INSURANCE COMPANY OF PUERTO RICO; Y OTROS<br><br>Apelado<br><br>v.<br><br>PRIME HEALTH SERVICES, INC. Y ASEGURADORAS A, B, C<br><br>Apelante | TA2026AP00336 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Número: AR2025CV00201<br><br>Sobre: Caída |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Comparece ante esta Curia, Prime Health Services, Inc. (Prime Health o parte apelante) y solicita que revoquemos la *Sentencia Parcial* que el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o foro primario) emitió y notificó, el 13 de noviembre de 2025.[1] Mediante el referido dictamen, el foro primario desestimó con perjuicio la causa de acción extracontractual por daños y perjuicios, pero mantuvo vigente la acción contractual de indemnización y nivelación presentada por el Hospital Pavía de Arecibo y Universal Insurance Company (parte apelada) en contra de Prime Health.

Por los fundamentos que exponemos a continuación, revocamos en parte el dictamen apelado.

---

[1] Sistema Unificado de Administración y Manejo de Casos (SUMAC) TA, Entrada Núm.1, Apéndice 35.

**I.**

El 6 de febrero de 2025, el señor Ángel Luis Ramírez (señor Ramírez) presentó una *Demanda* por daños y perjuicios contra el Hospital Pavía de Arecibo (Hospital) y Universal Insurance Company (Universal).[2] En síntesis, alegó que, el 7 de junio de 2023, sufrió una caída cuando se aproximaba a una de las puertas de salida del Hospital, al resbalar la muleta que utilizaba sobre el piso que estaba húmedo.[3] Adujo, la condición de humedad del área se debió a la condensación que generó el sistema de aire acondicionado, palpado así en la pared sobre la cual se deslizó tras la caída. Sostuvo que, el Hospital conocía de la condición de humedad del área ya que había colocado un evaporador para manejar la condensación que generó el sistema de aire acondicionado. En su consecuencia, sostuvo que dicha parte responde por ser dueño y tener bajo su cuidado, control y dominio el área donde sufrió el accidente, junto a Universal, por tener una póliza de seguros por responsabilidad pública expedida a favor del Hospital. El señor Ramírez expuso que, como consecuencia del accidente: sufrió una nueva fractura en el tendón de aquiles derecho que requirió otra intervención quirúrgica; le colocaron yeso por 6 semanas; utilizó bota ortopédica y sillón de ruedas; se le ordenó terapias físicas; y perdió sus dos trabajos debido a las ausencias por los tratamientos médicos, entre otros. Así pues, reclamó por daños físicos y emocionales una suma no menor de $200,000.00 y $50,000.00, respectivamente.

En reacción, el Hospital Pavia de Arecibo y Universal Insurance Company presentaron *Contestación a Demanda*.[4] Allí, se alegó afirmativamente que, para el día de los hechos, el área donde ocurrió el accidente estaba bajo el control y custodia de terceras

---

[2] *Íd.*, Apéndice 1.
[3] Surge de la demanda, el 4 de marzo de 2024, el señor Ramírez reclamó extrajudicialmente al Hospital, y el 5 de julio de 2024, cursó una oferta transaccional a Universal, interrumpiendo así el término prescriptivo.
[4] SUMAC TA, Entrada Núm.1, Apéndice 12.

personas y no del Hospital, entre otros planteamientos. Además, se negó que el piso y paredes del área donde ocurrió el incidente hayan estado húmedas.

En la misma fecha, la parte apelada presentó *Demanda contra Tercero*, contra Prime Health.[5] Por un lado, se afirmó que, para la fecha de los hechos, los apelantes habían suscrito con el Hospital, y mantenían vigente, un *Contrato de Servicios* por el cual Prime Health se obligó a proveer servicios de limpieza y mantenimiento en las facilidades del Hospital.

Así pues, y en vista de que en la *Demanda* el señor Ramírez alegó que el Hospital incurrió en negligencia, al no asegurarse que el área del accidente estuviera en buen estado, y libre de condiciones peligrosas, en la *Demanda contra Tercero*, a su vez, el Hospital sostuvo que el área donde ocurrió el accidente es una de las áreas bajo el control y dominio de Primer Health, en virtud del contrato suscrito, entre ambos. En la tercera demanda, el Hospital planteó que, debido a los acuerdos de relevo, responsabilidad e indemnización contenidos en el contrato con Prime, en la eventualidad en que el Tribunal determine que el accidente ocurrió por la presencia de humedad, y/o falta de mantenimiento y limpieza en el área, es Prime Health quien está obligado a responder directamente al señor Ramírez.[6] Ahora bien, la parte apelada

---

[5] *Íd.*, Apéndice 13.

[6] Como parte de la *Demanda contra Tercero* se presentó como *Anejo* el *Contrato de Servicios*, del cual, según las alegaciones de la parte apelada, los acuerdos de relevo, responsabilidad e indemnización surgen de las siguientes cláusulas:

**Responsabilidad e Indemnización**: Como contratista independiente, PRIME HEALTH SERVICES, INC. exime de toda responsabilidad al DR. SUSONI HEALTH COMMUNITY SERVICES CORP., sus afiliadas y sus respectivos directores, oficiales, empleados y representantes, por cualquier accidente o daño que sufran PRIME HEALTH SERVICES, INC., sus empleados, agentes, subcontratistas, representantes en su carácter personal y/o en su propiedad, así como de cualquier daño que PRIME HEALTH SERVICES, Inc., sus empleados, agentes, subcontratistas o representantes causen a terceras personas y/o propiedad ajena, en o afuera de las facilidades del DR. SUSONI HEALTH COMMUNICTY SERVICES, CORP. o sus afiliadas mientras se encuentren desempeñando labores relacionadas con el presente Contrato.

también alegó que, en virtud de lo pactado entre las partes, Prime Health estaría obligado a indemnizarle por cualquier cuantía que, en su día, vengan obligados a pagar al señor Ramírez, de este prevalecer en la demanda principal.

Superadas varias instancias procesales que resultan necesarias pormenorizar, Prime Health presentó *Moción de Desestimación* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R.10.2, en la que arguyó que la demanda en su contra además de estar prescrita, carece de una reclamación que justifique la concesión de un remedio.[7] En cuanto a la prescripción, insistió en que la demanda contra terceros fue presentada luego del término de un año de ocurrido el accidente, según el término prescriptivo para acciones por daños y perjuicios. Por otro lado, indicó que, el señor Ramírez en su demanda reclamó en cuanto a la condición de peligrosidad causada por la humedad que provocó el aire acondicionado del Hospital, no así por negligencia en limpieza. Asimismo, enfatizó en lo resuelto por el Tribunal Supremo en *Maldonado Rivera v. Suárez*, 195 DPR 182 (2016), en particular: "un cocausante demandado no puede traer al pleito mediante demanda contra tercero a un presunto cocausante solidario con respecto a

---

De igual forma, PRIME HEALTH SERVICES, INC., defenderá, protegerá y revelará de toda responsabilidad al DR. SUSONI HEALTH COMMUNITY SERVICES, CORP., a sus afiliadas y sus respectivos directores, oficiales, empleados y representantes de y contra toda reclamación, daños, transacción, pérdida, multas, penalidades, costos y gastos (incluyendo sin limitación gastos legales y de investigación razonables), que surjan como consecuencia de cualquier acto u omisión de PRIME HEALTH SERVICES, INC., sus empleados, agentes, subcontratistas o representantes, así como de aquellas que surjan de la violación o incumplimiento de PRIMER HEALTH SERVICES, INC., con los términos de este Contrato o del desempeño de sus obligaciones bajo este Contrato.

[...]

Estas provisiones de indemnización y responsabilidad se mantendrán vigentes aún después de la expiración o terminación de este Contrato.

[7] *Íd.*, Apéndice 21.

quien la causa de acción del perjudicado prescribió". Basado en lo anterior, solicitó la desestimación de la demanda en su contra.

En vista de ello, el TPI emitió *Orden* para que el señor Ramírez fijara posición.[8] A tales efectos, el 25 de junio de 2025, el señor Ramírez presentó *Moción en Cumplimiento de Orden* en la que expresó que concurría con los planteamientos de Prime Health, en cuanto a que la demanda de terceros está prescrita.[9]

Por su parte, la parte apelada instó *Moción en Cumplimiento de Orden en torno a Moción de Desestimación presentada por Tercero Demandado.*[10] Allí, se arguyó que la doctrina establecida en *Maldonado Rivera v. Suárez, supra,* no se extiende a acciones de nivelación de tipo contractual. En particular, que Prime Health asumió la obligación contractual de relevar y exonerar al Hospital por cualquier reclamación, lesión o daño que sufriera cualquier persona como consecuencia del desempeño de Prime Health con los servicios pactados en el *Contrato de Servicios.* Asimismo, adujo que Prime Health se obligó contractualmente a indemnizarle por cualquier cuantía de dinero que se les imponga por razón de cualquier acto u omisión negligente de parte de Prime Health en el desempeño de los servicios pactados. Así, la parte apelada solicitó mantener la acción contractual y de nivelación instada mediante la demanda contra tercero.[11]

En su réplica, Prime Health insistió haber sido liberada de cualquier responsabilidad para con la parte demandante, señor Ramírez, por prescripción.[12] Además, argumentó que, no procede la alegada acción de nivelación en su contra. Asimismo, el 18 de agosto de 2025, Prime Health presentó moción en la que reiteró su solicitud de desestimación por prescripción.[13]

---

[8] *Íd.,* Apéndice 22.
[9] *Íd.,* Apéndice 25.
[10] *Íd.,* Apéndice 29.
[11] *Íd.,* Apéndice 26.
[12] *Íd.,* Apéndice 31.
[13] *Íd.,* Apéndice 33.

Evaluado lo antes, el TPI emitió la *Sentencia Parcial* apelada. En esta estableció que de la demanda contra tercero surgían dos reclamaciones: 1) de naturaleza extracontractual, en la que Prime Health estaría sujeto a responder directamente al señor Ramírez; y 2) otra de naturaleza contractual de indemnización y nivelación basada en el acuerdo contractual entre Prime Health y el Hospital con relación a los servicios de limpieza y mantenimiento del área del accidente.[14] Por un lado, el TPI determinó que la acción extracontractual estaba prescrita. Ahora bien, el foro primario dispuso que la acción contractual de indemnización surge del contrato suscrito entre Prime Health y el Hospital, y está regida por el término de prescripción de cuatro (4) años dispuesto en el Artículo 1203 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9495. Determinó que, según las alegaciones de la tercera demanda, el contrato contiene cláusulas expresas de relevo e indemnización, por lo cual, la reclamación no se encuentra prescrita y así mantuvo la acción de nivelación.

Consecuentemente, el foro primario desestimó, con perjuicio, la acción extracontractual dirigida a que Prime Health responda directamente al señor Ramírez. No obstante, mantuvo vigente la <u>acción contractual de indemnización y nivelación</u> presentada por el Hospital y Universal contra Prime Health. Por último, dispuso: "De determinarse en su día que Prime contribuyó a la ocurrencia del daño, el porcentaje de responsabilidad que se le atribuya deberá ser descontado de la compensación que, en su caso, este Tribunal conceda a la parte demandante".

Prime Health procuró revertir el referido dictamen mediante una *Solicitud de Reconsideración*.[15] Sostuvo, aun cuando el derecho de nivelación sea uno contractual, se ha reconocido que, si la

---

[14] *Íd.*, Apéndice 35.
[15] *Íd.*, Apéndice 36.

reclamación principal sobre daños y perjuicios se encuentra prescrita a favor de uno de estos, la acción de nivelación entre los cocausantes se torna improcedente. Formuló, habiendo sido liberada Prime Health de toda posible responsabilidad, no puede retenerse en el pleito por los demandantes contra tercero. Además, planteó que el derecho de nivelación de un codeudor no surge hasta que efectúa un pago mayor a la proporción que le corresponde. Concluyó, su responsabilidad bajo los términos del contrato no se activa puesto que, el Hospital no pagará por ninguna negligencia atribuible a Prime Health.

Por su parte, el Hospital y Universal presentaron *Oposición a Solicitud de Reconsideración de Sentencia Parcial.*[16] La parte apelada sostuvo que, el derecho de nivelación de cada cocausante, conforme a *Maldonado Rivera v. Suárez, supra,* surgió por la relación de solidaridad imperfecta habida y no por razón de un vínculo legal o contractual existente. Se indicó que, el caso de autos versa sobre una acción de nivelación de índole contractual, y no de índole extracontractual sujeta al término prescriptivo de cuatro (4) años establecido en el Artículo 1203, del Código Civil, *supra,* el cual empezó a correr en la fecha en que se presentó la demanda. Nótese, se fundamentó, la acción de nivelación surge al amparo de las cláusulas de *indemnity* y relevos acordados entre las partes en dicho contrato, por medio de las cuales Prime Health se comprometió a indemnizar a la compareciente por cualquier suma o sumas de dinero que estos estuvieron obligados a pagarles a la parte demandante a consecuencia de cualquier negligencia cometida por Prime Health en el desempeño de los servicios pactados en el contrato.

En respuesta, Prime Health instó moción el 12 de diciembre de 2025, en la que invocó los planteamientos esbozados en sus

---

[16] *Íd.*, Apéndice 38.

comparecencias anteriores, y reiteró que el relevo por prescripción es total, tanto la relación interna como en la externa.[17] En el mismo día, el foro primario emitió orden en la que concedió término al Hospital y Universal para presentar dúplica, y así quedó sometido a la consideración del Tribunal.[18]

Finalmente, el 9 de marzo de 2026, el foro primario emitió *Resolución* en la que declaró *No Ha Lugar* la solicitud de reconsideración presentada por Prime Health.[19]

Inconforme, el 6 de abril de 2026, la parte apelante acude ante esta Curia y señala la comisión de los siguientes errores, a saber:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA PARCIAL MANTENIENDO VIVA LA ALEGADA ACCIÓN DE NIVELACIÓN CUANDO LA MISMA DESVIRTÚA DE MANERA INFUNDADA, CONTRARIA A DERECHO, PREJUICIADA, PARCIALIZADA, DISCORDANTE Y DESACERTADA EL DERECHO VIGENTE.
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN CONSIDERAR QUE LA ACCIÓN DE NIVELACIÓN DEBE MANTENERSE VIVA A PESAR DE QUE LAS APELADAS NUNCA RESPONDERÁN AL DEMANDANTE POR CUALQUIER ACTO U OMISIÓN POR ATRIBUIBLE A PRIME.

A su vez, el Hospital Pavia de Arecibo y Universal Insurance Company comparece el 6 de mayo de 2026, mediante *Alegato en Oposición a Apelación Civil*, por lo que, con el beneficio de las posturas de ambas partes, procedemos a resolver.[20]

## II.

### A. *Regla 10.2 de Procedimiento Civil*

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, viabiliza que un demandado solicite la desestimación de la causa de acción en su contra, antes de contestarla, si de las alegaciones de la demanda surge claramente que alguna de las defensas afirmativas prosperará. *Saint Mary Investments, LLC v. Denton Morales*, 2026

---

[17] *Íd.*, Apéndice 39.
[18] *Íd.*, Apéndice 40.
[19] *Íd.*, Apéndice 43.
[20] SUMAC TA, Entrada Núm. 3.

TSPR 35, resuelto 9 de abril de 2026; *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 83 (2023). Particularmente, la Regla 10.2, *supra*, enumera las siguientes defensas: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio; y 6) dejar de acumular una parte indispensable. Regla 10.2 de Procedimiento Civil, *supra.*

Ante una solicitud de desestimación bajo el inciso (5) de la citada Regla 10.2 de Procedimiento Civil, el tribunal ha de tomar como ciertos todos los hechos claros y concluyentes, bien alegados en la demanda. *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022). Asimismo, el tribunal deberá evaluar si la demanda es suficiente para constituir una reclamación válida, luego de interpretar las alegaciones, conjunta y liberalmente, de la forma más favorable a la parte demandante, y resolviendo toda duda a su favor. *Íd.*

Cabe destacar que, la desestimación de una demanda no procede, menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que pueda ser probado en apoyo a su reclamación. *Eagle Security Police, Inc. v. Dorado, supra.* En ese sentido, el Tribunal Supremo ha establecido que, una solicitud de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, supra, va dirigida a los méritos de la controversia, no a aspectos procesales del caso. *Íd.*

### B. *La Prescripción Extintiva y la Demanda Contra Tercero*

La prescripción extintiva es un modo de extinción de los derechos que finaliza el derecho a ejercer determinada causa de acción. *Cacho González et al. v. Santarrosa et al.*, 203 DPR 245, 228

(2019). Resulta de la ausencia de algún acto interruptor durante el plazo marcado por la ley y se fundamenta en la necesidad de que haya estabilidad en las relaciones y seguridad en el tráfico jurídico. *Íd.* Nuestro Código Civil, en el Artículo 1197, reconoce tres actos interruptores: (1) la correspondiente acción judicial; (2) la reclamación extrajudicial, y (3) el reconocimiento de la obligación por parte del deudor. 31 LPRA sec. 9489. *Íd.* Una vez se interrumpe la prescripción, el término prescriptivo comienza a transcurrir nuevamente. *Íd.*

El Artículo 1536 del *Código Civil de Puerto Rico de 2020* (Ley Núm. 55-2020), 31 LPRA sec. 10801, dispone que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo. La culpa o negligencia "consiste en la falta del debido cuidado, por no anticipar ni prever las consecuencias de un acto u omisión, que una persona prudente y razonable habría de prever en las mismas circunstancias". *Cruz Flores v. Hospital Ryder Memorial, Inc.*, 210 DPR 465, 484 (2022) (énfasis suprimido); *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 976-977 (2021).

En materia de daños y perjuicios, todo menoscabo material o moral conlleva su reparación si concurren tres elementos básicos: (1) un acto u omisión culposo o negligente del demandado; (2) la presencia de un daño físico o emocional en el demandante y (3) que exista un nexo causal entre el daño sufrido y el acto u omisión. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010). Recae sobre la parte que solicita ser indemnizada el deber de establecer, mediante preponderancia de la prueba, todos los elementos de la causa de acción por daños y perjuicios. *SLG Colón-Rivas v. ELA*, 196 DPR 855, 864 (2016). Cabe señalar, el Artículo 1204 del Código Civil, 31 LPRA sec. 9496, establece que las acciones para exigir responsabilidad civil extracontractual prescriben por el transcurso de un (1) año. En cuanto al referido término prescriptivo,

el punto de partida para que comience a decursar es la fecha en que el agraviado conoció el daño, así como quien fue su autor.

Por otro lado, en el ámbito de derecho civil extracontractual, cuando un daño se produce por la intervención de varios sujetos, la responsabilidad que se produce es de naturaleza solidaria. *Maldonado Rivera v. Suárez, supra*; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012). No obstante, el precepto jurídico vigente reconoce que, aun cuando en dicho escenario cada uno puede ser llamado a responder por entero, la responsabilidad individual es autónoma, puesto que "el vínculo del cual se deriva la obligación de cada cocausante es independiente." *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra*, págs. 380-381.

En ese sentido, para fines de la prescripción de una acción, cuando concurren dos o más sujetos en la producción de determinado daño, la solidaridad que los vincula es *impropia*, por lo que la interrupción del plazo correspondiente frente a un cocausante, no opera respecto a los demás que sean conocidos por el demandante. Consecuentemente, el perjudicado está obligado a interrumpir el término prescriptivo de un año de la causa de acción frente a cada uno de los presuntos cocausantes conocidos. *Maldonado Rivera v. Suárez, supra*, pág. 211.

Por otro lado, la demanda contra terceros es un mecanismo procesal disponible para aquella persona que desea aprovecharse de una defensa cuyo efecto es atribuirle la culpa exclusiva, o parte de ésta, a un tercero que no es parte del pleito. *Torres v. A.F.F.,* 94 DPR 314, 318 (1967). Si el tercero no es incluido en el pleito, cualquier determinación sobre la responsabilidad de éste en nada lo obliga y no puede perjudicarle la reclamación del demandante. *Íd*. La acción contra un tercero está disponible para reclamar el importe de la sentencia que el demandante contra tercero venga obligado a pagar como consecuencia del acto negligente o culposo de

tercero. *Rodríguez v. Colón Colón,* 103 DPR 493, 496 (1975); *Chico Ramos v. Editorial Ponce, Inc.,* 101 DPR 759, 780 (1973).

Además, se ha permitido el uso de la demanda contra tercero como un mecanismo procesal para traer al pleito a un presunto cocausante de un daño y así permitir una acción de nivelación. Sin embargo, "la premisa que posibilita la acción de nivelación contingente es que la causa de acción del demandante contra tercero no esté prescrita". *Maldonado Rivera v. Suárez, supra,* pág. 205. Esto se debe a que la reclamación sobre daños y perjuicios es la causa de acción principal y la acción de nivelación es subsidiaria y dependiente. Por tanto, si la primera acción no está disponible por motivo de prescripción, la segunda acción se torna improcedente. *Íd.* pág. 208. Valga aclarar, si la obligación de un cocausante se extingue o deja de ser exigible, ese cocausante queda liberado y los otros no pueden recurrir a la acción de nivelación. *Íd.* pág. 184.

## C. *La Concurrencia de causas de acción*

Nuestro Código Civil, hace distinción entre los daños derivados del incumplimiento de una obligación, y los daños derivados de la culpa extracontractual. En cuanto a la indemnización producto de las obligaciones, el Artículo 1158 dispone que "[l]a persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados". 31 LPRA 9303. Ahora bien, el deber de resarcimiento se incluye en el marco de una relación obligatoria; en un caso se trata de una relación delictual y en otro de una relación contractual. *Ramos Lozada v. Orientalist Rattan Furniture Inc.,* 130 DPR 712, 722 (1992). De modo que, una misma conducta puede dar origen a dos tipos de causas de acción distintas: una apoyada en el concepto de negligencia y la otra en las obligaciones contraídas mediante acuerdo previo. Esto es, la teoría de concurrencia de acciones. *Maderas Tratadas v. Sun Alliance,* 185 DPR 880, 910 (2012).

Cónsono con lo anterior, la distinción más significativa entre ambos cursos de acción radica en el término prescriptivo de cada uno. Como antes mencionamos, la acción extracontractual prescribe al año, más el término prescriptivo para las acciones personales es de cuatro años. 31 LPRA secs. 9495,6.

**D.** *Acumulación de reclamación contingente y demanda contra tercero*

La Regla 14.1 de Procedimiento Civil, 32 LPRA Ap. V., R. 14.1, dispone que "cualquier parte podrá acumular en su alegación tantas reclamaciones independientes o alternativas como tenga contra la parte adversa".

En lo pertinente, la Regla 14.2 expresamente permite la acumulación de reclamaciones contingentes, esto es:

> Cuando se trate de una reclamación que dependa para su ejercicio de que se prosiga otra reclamación hasta su terminación, estas dos reclamaciones podrán acumularse en el mismo pleito. El tribunal no resolverá la reclamación contingente hasta tanto se resuelva la reclamación principal. 32 LPRA Ap. V.

Al referirse a la acumulación de una reclamación contingente, el Tribunal Supremo ha expresado que "'es algo usual y corriente en la practica procesal', siendo la única limitación que el tribunal no la podrá resolver hasta que ventile la reclamación principal de la cual depende, o sea, hasta que la sentencia en la acción principal no advenga final y firme". *Inmobiliaria Baleares, LLC v. Benabe González*, 214 DPR 1109, 1124,5 (2024); *Marquez v. Barreto*, 143 DPR 137, 144 (1997).

Puede acumularse la reclamación contingente en una reconvención, así como en una demanda contra coparte o contra terceros. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil* § 2412 (6ta ed. 2017). Nótese, el Máximo Foro en *Rodón v. Fernández Franco*, 105 DPR 368, 377 (1976), aclaró "[e]s igualmente contingente la demanda contra tercero, autorizada por la Regla 12.1, que permite a un demandado traer a un pleito a una

persona que no sea parte en el pleito y que le sea o pueda serle responsable por toda o parte de la reclamación demandante".

En esa dirección, la demanda contra tercero es el mecanismo por excelencia para un demandado entablar una reclamación contingente contra otro cocausante ausente del litigio.[21] De esta manera la Regla 12.1 de Procedimiento Civil dispone:

> La parte demandada podrá notificar, como demandante contra tercero, un emplazamiento y demanda a una persona que no sea parte en el pleito y que sea o pueda ser responsable a la parte demandada por la totalidad o por parte de la reclamación de la parte demandante, o que sea o pueda ser responsable a cualquier parte en el pleito. 32 LPRA Ap. V.

Ahora bien, "[l]a reclamación contingente debe hacerse con la misma suficiencia exigible que si fuera ésta promovida separadamente. Debe satisfacer todos los requisitos dispuestos en las reglas sobre las alegaciones". J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Publicaciones JTS, 2000, T. II, pág. 625.

### III.

En sus señalamientos de error, la parte apelante impugna la determinación del foro primario en su *Sentencia Parcial*, de mantener viva la alegada acción de nivelación de tipo contractual a pesar de que la parte apelada nunca responderá al demandante por cualquier acto u omisión atribuible a Prime Health. Así, arguye que el TPI abusó de su discreción al emitir la referida resolución, contraria a derecho, en la que mantuvo vigente la acción de incumplimiento contractual y nivelación presentada por el Hospital y Universal contra Prime Health.

Por su parte, la parte apelada plantea que la acción instada, en virtud del *Contrato de Servicios*, en el cual Prime Health acordó indemnizarle por cualquier suma de dinero que estos vengan obligados a pagarle al demandante a consecuencia de cualquier acto

---

[21] I. Ramos Buonomo, *Derecho Procesal Civil*, 73 RJUPR 715, 729,30 (2004).

u omisión negligente en el desempeño de las labores de limpieza y mantenimiento, entre otros.

Examinados los planteamientos de las partes, y por estar estrechamente relacionados, procedemos a discutir los señalamientos de error en conjunto.

Es norma reiterada, el propósito de demanda contra terceros es establecer un mecanismo para facilitar la resolución pronta y económica de controversias múltiples que puedan surgir de los mismos hechos. *Szendrey v. Hospicare, Inc.*, 158 DPR 648, 653 (2003); *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20 (1986). Esta acción no crea, extiende o limita derechos sustantivos, más bien, acelera su dilucidación. *Gen. Accid. Ins. Co. P.R. v. Ramos*, 148 DPR 523, 534 (1999). Bajo el crisol doctrinario, la reclamación contra tercero sólo procede cuando la responsabilidad de [ese tercero] dependa en alguna forma del resultado de la acción principal o cuando el tercero le es secundaria o directamente responsable al demandante. *Camaleglo v. Dorado Wings, Inc.*, *supra*, pág. 30.

Por un lado, nuestro ordenamiento jurídico lo ha reconocido como un mecanismo procesal para traer al pleito a un presunto cocausante de un daño y así permitir una acción de nivelación. Ahora bien, "la premisa que posibilita la acción de nivelación contingente es que la causa de acción del demandante contra tercero no esté prescrita". *Maldonado Rivera v. Suárez*, *supra*, pág. 205. Claro está, la acción de nivelación es subsidiaria y dependiente de la causa de la causa de acción principal de índole extracontractual.  Por tanto, si la obligación de un cocausante de una reclamación extracontractual se extingue o deja de ser exigible por prescripción, ese cocausante queda liberado y los otros no pueden recurrir a la acción de nivelación. *Íd*. pág. 184.

Así reconocido, la acción de nivelación procede en casos de obligaciones <u>*ex contractu*</u> y en los de obligaciones *ex delictu* o *ex*

*culpa*, la cual puede ejercitarse en el mismo proceso en que el acreedor demandó a los obligados solidariamente. R. E. Ortega-Vélez, *Diccionario de Palabras y Frases: Derecho Puertorriqueño*, 5.ª ed. Rev., San Juan, Ediciones SITUM, Inc., 2022, 8. En ese sentido, en Puerto Rico, el derecho de nivelación entre cocausantes de un daño ha sido reconocido y se basa principalmente en la equidad. *Íd.* El propósito principal de tal acción es evitar el enriquecimiento injusto, surgiendo así el derecho en el momento en que un codeudor haya efectuado un pago mayor a la proporción que le corresponde. *Íd.*

Para un entendimiento cabal de las cuestiones de derecho que debemos analizar y resolver, es preciso detallar las alegaciones de la *Demanda contra Tercero* instada por el Hospital y Universal contra Prime Health. Por un lado, la parte apelada sostuvo: 1) el área donde ocurrió el accidente es una de las áreas bajo el control y dominio de Prime Health, pues, en virtud del *Contrato de Servicio*, es una de las áreas donde se obligó a proveer servicios de mantenimiento y limpieza; 2) conforme al contrato suscrito por las partes, Prime Health exime de toda responsabilidad al Hospital y Universal, por cualquier accidente o daño que Prime Health, cause a terceras personas y/o propiedad ajena, en o afuera de las facilidades del Hospital mientras se encuentren desempeñando labores relacionadas con el Contrato; 3) de igual forma, Prime Health, defenderá, protegerá y revelará de toda responsabilidad al Hospital y Universal, de y contra toda reclamación, daños, transacción, pérdida, multas, penalidades, costos y gastos (incluyendo sin limitación gastos legales y de investigación razonables), que surjan como consecuencia de cualquier acto u omisión de Prime Health, así como de aquellas que surjan de la violación o incumplimiento de Prime Health, con los términos del Contrato o del desempeño de sus obligaciones bajo el Contrato.

En el caso de autos, no existe controversia en cuanto a que la parte demandante, el señor Ramírez, aceptó que su causa de acción contra Prime Health, por responsabilidad civil extracontractual prescribió.[22] Por lo cual, Prime Health no está obligado a responder directamente al demandante. Consecuentemente, la parte demandante no podrá recibir compensación alguna por los actos atribuibles a Prime Health, de así determinarse en su día. Es decir, el hecho de que la causa de acción haya prescrito tiene el efecto de que la parte demandante no podrá, en ningún concepto, reclamarle a Prime Health, tampoco recibir compensación por el por ciento de responsabilidad que el Tribunal, en su día, imponga a este, si alguno.

En vista de ello, concluimos que no procede la mal denominada "acción contractual de indemnización y nivelación" en contra de Prime Health de naturaleza extracontractual cuando de ninguna manera el Hospital y Universal vendrán obligados a pagar cuantía por la responsabilidad extracontractual que se le pudiera imputar a la parte liberada. Si bien es cierto que un codeudor sujeto al pago puede incoar una reclamación contingente de nivelación contra otro codeudor, en el caso de autos, la causa de acción de naturaleza extracontractual del señor Ramírez en contra de Prime Health está prescrita. Conforme lo resuelto en *Maldonado Rivera v. Suárez, supra*, es improcedente una "acción de indemnización y nivelación", en vista de que el señor Ramírez está imposibilitado de recibir compensación por la negligencia que Prime Health pudiera haber incurrido. Por lo cual, el Hospital y Universal sólo estarán sujetos a responder por sus propias actuaciones.

Ahora bien, ante el cuadro fáctico procesal enunciado, observamos que, la demanda principal entre el señor Ramírez y el Hospital junto a Universal, aún queda pendiente ante el foro

---

[22] Véase, SUMAC TA, Entrada Núm.1, Apéndice 25.

primario. No obstante, es evidente, de la *Demanda contra Tercero* surge un reclamo característico de una acción que se deriva del incumplimiento de las obligaciones contractuales. Enfatizamos, el caso de epígrafe trata de dos reclamaciones, una principal (responsabilidad civil extracontractual por negligencia contra el Hospital y Universal) y una contingente (acción que se deriva del incumplimiento de las obligaciones pactadas entre el Hospital y Prime).

Conforme a la Regla 14 de Procedimiento Civil, *supra,* por acumulación de reclamaciones se entiende la presentación de dos o más reclamaciones por una parte en un mismo proceso. Pueden acumularse también, según la Regla 14.2, *supra*, reclamaciones que dependan para su procedencia de que otra reclamación sea llevada a su terminación. Contingente quiere decir que puede suceder o no suceder. Puede acumularse la reclamación contingente en una demanda contra terceros. *Rodón v. Fernández Franco, supra*; *Hernández Colón, op. cit.,* § 2412.

Según se alegó en la *Demanda Contra Tercero*, las partes suscribieron un contrato en el cual Prime Health acordó indemnizar, defender, proteger y relevar al Hospital y Universal, de cualquier reclamación instada en su contra por cualquier acto u omisión negligente cometido por Prime Health en el desempeño de las funciones de mantenimiento y limpieza. Sin duda, la reclamación contingente cumple con la suficiencia exigible que si fuera ésta promovida separadamente y satisface los requisitos dispuestos en las reglas sobre las alegaciones.

En ese sentido, de acuerdo con la antes citada Regla 14.2 de Procedimiento Civil, *supra*, tendrá lugar como reclamación contingente, la acción por incumplimiento contractual cuando se adjudique la causa de acción principal por responsabilidad civil extracontractual en contra del Hospital y Universal, por sentencia

final y firme. La demanda contra tercero no 'madura' hasta ese momento. Sin embargo, es permisible y contingente al resultado del pleito principal. Dicho de otro modo, la acción de índole contractual depende para su ejercicio de que la acción de daños instada por el señor Ramírez sea seguida hasta su terminación.

Con lo anterior expuesto, erró el Tribunal de Primera Instancia al mantener vigente una acción de nivelación. No obstante, hemos reconocido que, en esta etapa procesal, conforme a la Regla 14.2 de Procedimiento Civil, *supra*, se mantiene vigente en contra de Prime Health, una reclamación contingente que se deriva del incumplimiento de las obligaciones pactadas presentada por el Hospital y Universal.

## IV.

Por los fundamentos expuestos, revocamos en parte el dictamen apelado. En su consecuencia, se desestima, con perjuicio, la acción de nivelación en contra de Prime Health. Ahora bien, prevalece una reclamación contingente según autoriza la Regla 14.2 de las Reglas de Procedimiento Civil, *supra*, por alegado incumplimiento de las obligaciones pactadas en virtud del *Contrato de Servicio* suscrito entre el Hospital y Prime Health.[23]

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] Nuestra determinación se circunscribe a los errores planteados por la parte apelante, por lo que se queda inalterada la *Sentencia Parcial* sobre desestimación con perjuicio de la acción extracontractual dirigida a Prime Health.